PER CURIAM.
 

 Union Carbide Corporation loaned some $225,000 to New-Kro Oil Company. New-Kro gave Union Carbide a promissory note in return for the loan, and the President of New-Kro and his wife, F. Allen and Mary Y. Newboles, personally guaranteed New-Kro’s repayment of the loan. When New-Kro defaulted on its repayment of the loan, Union Carbide brought this diversity action against Mr. and Mrs. Newboles and New-Kro on October 31, 1978 in an attempt to recover the approximately $70,000 still owing on the note. On November 8, 1978, New-Kro petitioned for relief under Chapter XI of the Bankruptcy Act of 1898. New-Kro filed an amended proposed plan of arrangement for settlement of its unsecured debt on September 14, 1979. The plan allowed a twenty percent return on unsecured claims, and contained the following provision:
 

 Impact of Arrangement on Guaranty Holders
 

 Acceptance and confirmation of this Arrangement shall constitute a full settlement, satisfaction and discharge of all claims, demands, actions, causes of action or otherwise against not only the Debtor, but also against any other persons or entities who have entered into guaranty or indemnity agreements with unsecured creditors or who have endorsed commercial paper for the benefit of the Debtor, It is the intent of this Arrangement that upon its acceptance and confirmation, any creditors asserting claims arising out of agreements against persons or entities other than the Debtor by reason of indebtedness of the Debtor, shall be required to look solely to the Debtor for payment of such indebtedness under the terms of this Arrangement.
 

 The plan was approved by a majority of the creditors, including Union Carbide, and was confirmed by the bankruptcy court. Pursuant to the plan New-Kro paid Union Carbide $14,337.01, leaving $55,715.90 un
 
 *595
 
 paid principal on the note. The district court then granted summary judgment for Union Carbide against Mr. and Mrs. New-boles in the amount of the unpaid principal plus interest of $3,734.98, and Mr. and Mrs. Newboles appeal.
 

 On appeal, Mr. and Mrs. Newboles argue that their liability as guarantors on the note was erased by Union Carbide’s approval of the bankruptcy plan. In particular, Mr. and Mrs. Newboles argue that Union Carbide’s approval of the above-quoted provision in the plan and acceptance of New-Kro’s discharge payment worked an accord and satisfaction under Indiana law, which the district court must respect when sitting in diversity. But Section 16 of the Bankruptcy Act of 1898, 11 U.S.C. § 34 (repealed effective October 1, 1979), is to the contrary. Section 16 provides that “[t]he liability of a person who is a co-debt- or with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt.”
 
 [1]
 
 Section 16 makes clear that the discharge of New-Kro itself had no effect upon the liability of Mr. and Mrs. Newboles on the note, and indeed we have held that the bankruptcy court has no power to discharge the liabilities of a bankrupt’s guarantor.
 
 In re Diversey Building Corp.,
 
 86 F.2d 456, 458 (7th Cir. 1936), certiorari denied, 300 U.S. 662, 57 S.Ct. 492, 81 L.Ed. 870. We hold that a creditor’s approval of the bankruptcy plan does not discharge the bankrupt’s guarantors either.
 

 A bankruptcy discharge arises by operation of federal bankruptcy law, not by contractual consent of the creditors.
 
 In re Kornbluth,
 
 65 F.2d 400, 402 (2d Cir. 1933). A creditor’s approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings, simply because the gamesmanship imported from state contract law into the bankruptcy proceedings would be intolerable. Since a majority of the creditors must approve the debtor’s plan for the debtor to be discharged, in many instances one creditor’s approval or disapproval will have no effect even in the bankruptcy proceeding. In the case that a single creditor’s vote is determinative, imputing extra-bankruptcy significance to it for that reason violates the specific command of Section 16 that “[t]he liability of a * * * guarantor * * * shall not be altered by the discharge of [the] bankrupt.” This case is no different because the plan expressly purports to discharge guarantors of the bankrupt. The import of Section 16 is that the mechanics of administering the federal bankruptcy laws, no matter how suggestive, do not operate as a private contract to relieve co-debtors of the bankrupt of their liabilities. See
 
 R. I. D. C. Industrial Development Fund v. Snyder,
 
 539 F.2d 487, 490 n. 3 (5th Cir. 1976) (creditor’s approval of Chapter XI bankruptcy arrangement that purported to eliminate the underlying debt did not prevent the creditor from having recourse against the guarantor), certiorari denied, 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542;
 
 United States v. George A. Fuller Co.,
 
 250 F.Supp. 649, 656, 658 (D.Mont.1966).
 

 Similarly, the payment which effects a discharge is not consideration for any promise by the creditors, much less for one to release non-party obligors.
 
 In re Kornbluth,
 
 65 F.2d 400, 402-403 (2d Cir. 1933);
 
 Post v. Losey,
 
 111 Ind. 74, 12 N.E. 121 (1887). Thus Union Carbide’s receipt of the discharge payment of $14,337.01 does not estop it to collect the rest of the debt from Mr. and Mrs. Newboles.
 

 Therefore we affirm the order of the district court granting summary judgment for Union Carbide.
 

 [1]
 

 . Section 16 was rewritten and reenacted in the Bankruptcy Reform Act of 1978 at 11 U.S.C. § 524(e).