**In re SCRANES, INC., Debtor.**

**Bankruptcy No. 583–174.**

United States Bankruptcy Court, N.D. Ohio.

Dec. 22, 1986.

Ronald Towne, Akron, Ohio, for Huntington Bank.

Jeffrey Heintz, Akron, Ohio, for debtor.

Stephen D. Umberger, Cleveland, Ohio, for SBA.

FINDING AS TO MOTION OF DEBTOR
TO COMPEL ACCEPTANCE
OF PAYMENT

H.F. WHITE, Bankruptcy Judge.

## I. BACKGROUND

On August 7, 1986 this court entered an order confirming a chapter 11 plan of reorganization of Scranes, Inc. which stated in part:

> 2.3 *Class Three Claims.* The Class Three Claims of The Huntington National Bank and the Small Business Administration arise out of a working capital loan secured by inventory and equipment of the Debtor, guaranteed by the Small Business Administration. *The Small Business Administration has a claim against the Debtor and James L. Eltzroth and Freda C. Eltzroth on account of such guarantee.* During the course of these proceedings, The Huntington National Bank has received from the Debtor the sum of Twenty-four Thousand Eight Hundred Eighty-nine and 4/100 Dollars ($24,889.04), which has been applied by The Huntington National Bank to the loan. Pursuant to Title 11, U.S.C. § 506, The Huntington National Bank will be deemed to have a secured claim in the amount of One Hundred Thirty Thousand Dollars ($130,000.00) and will be paid Seventy Thousand Dollars ($70,000.00) within sixty (60) days of confirmation and the balance within one year of confirmation. *This payment to The Huntington National Bank will be deemed to be payment in full satisfaction of all obligations owed to The Huntington National Bank and to the Small Business Administration, whether by the Debtor, James L. Eltzroth, or Freda C. Eltzroth.* The claim is deemed unimpaired because payments have been made to The Huntington National Bank during the course of these proceedings, and the Plan contemplates payment of the principal balance in full.

Plan of reorganization of Scranes, Inc. filed Apr. 10, 1986 at 3–4 (emphasis added). Class three claims were denominated unimpaired, and Huntington National Bank (herein "bank") did not object to the plan of reorganization.

On September 15, 1986 the attorney for the debtor, Mr. Heintz, sent a letter to the attorney for the bank, Mr. Towne, enclosing three checks payable to the bank on three accounts, with instructions as to the application of the funds to the accounts. Exhibit A to motion of Scranes, Inc. to compel acceptance by the Huntington National Bank and the Small Business Administration of $70,000 payment from the debtor pursuant to the debtor's confirmed plan of arrangement (herein "motion") filed September 25, 1986. The bank was instructed to apply the proceeds of the checks in the sum of $37,491.12 to payment in full of principal and interest due on Note No. 13133503 and to discharge the mortgage securing the note. *Id.* The bank was instructed to return the checks if it was unable to comply with the instructions of the letter. *Id.* The bank did not comply with the instructions and returned the checks to the debtor. The debtor then filed its motion.

On October 16, 1986 the bank filed its reply brief to the debtor's motion. At a hearing held the same day, the following documents were submitted as exhibits although not marked as such:

1. Continuing Guaranty/Unlimited of James L. Eltzroth and Freda C. Eltzroth to Huntington Banks for the obligations of Scranes, Inc. dated July 7, 1981;

2. Promissory note, dated March 3, 1982 (presumably Note No. 13133503) in the sum of $23,667.45 payable to the order of the bank with Scranes, Inc., James T. Eltzroth, and Freda C. Eltzroth as makers, secured by a mortgage on property located in the City of Wadsworth, County of Medina, and State of Ohio at 282 Westgate Avenue (herein "note for the sum of $23,667.45");

3. Mortgage deed dated March 3, 1982 in the sum of $23,667.45 with James L. Eltzroth and Freda C. Eltzroth as mortgagors, and the bank as mortgagee, for property located in the City of Wads-

worth, County of Medina, and State of Ohio at 282 Westgate Avenue and recorded that same day;

4. Promissory note dated August 28, 1981 in the sum of $76,900 payable to the order of the bank with Scranes, Inc. as maker;

5. Mortgage participation dated August 28, 1981 in the sum of $76,900 with James L. Eltzroth and Freda C. Eltzroth as mortgagors, and the bank as mortgagee, for the property located at 282 Westgate Avenue, Wadsworth, Ohio;

6. Small Business Administration (herein "SBA") Guaranty in the sum of $76,900 from James L. Eltzroth and Freda C. Eltzroth to the bank collateralized by accounts receivable, inventory, furniture and fixtures, second mortgage on real estate located at 282 Westgate Avenue, Wadsworth, Ohio, SBA Guaranty Form 148, assignment of an insurance policy for $100,000, and flood hazard verification; and

7. Letter dated August 29, 1986 from Karl Burkhardt, vice president of the bank, to Mr. Towne setting forth various notes, their collateralization, principal and interest;

8. Promissory note dated March 1, 1982 in the sum of $9,500 payable to the order of the bank with Scranes, Inc. and James L. Eltzroth as makers, secured by one action Scrap Grapple Serial No. 2279;

9. Promissory note dated March 1, 1982 in the sum of $11,000 payable to the order of the bank with Scranes, Inc. and James L. Eltzroth as makers, secured by Warner-Swasey Hopto Model No. H550 Excavator Serial No. 78112; and

10. Promissory note dated March 29, 1982 in the sum of $33,624.03 payable to the order of the bank with Scranes, Inc. and James L. Eltzroth as makers secured by assignment of equipment, Ohio magnets Load Star 48–inch magnet.

At the hearing on the motion the debtor's attorney argued that the confirmed chapter 11 plan of the debtor is res judicata and binds the bank according to its terms. The bank's attorney argued that the discharge of the obligation owed by the plan applied only as to the corporation, and that the "spreader clause" contained within the mortgage deed for Loan No. 13133503 has the effect of cross-collateralizing the bank for the other obligations owed by the Eltzroths to the bank. The debtor's attorney indicated he didn't "realize the bank was relying on this clause", but did not question its validity or effect.

## II. ISSUES

(1) Whether the mortgage securing Loan No. 13133503 serves as additional security for the bank as to other obligations of the Eltzroths?

(2) Whether a confirmed chapter 11 plan which discharges the obligations of the debtor to its creditor can also discharge the obligations owed by third party guarantors to the same creditor?

## III. DISCUSSION OF LAW

The language of the promissory note underlying Loan No. 13133503 indicates that it is secured by a mortgage on 282 Westgate Avenue, Wadsworth, Ohio, and that:

> [i]f, at the time of the payment and discharge hereof, any of the undersigned shall be then directly or contingently liable to the Bank, as maker, indorser, surety or guarantor of any note, bill of exchange, or other instrument, or otherwise, then the Bank may continue to hold any collateral deposited hereunder after the payment of this note, and the Bank may thereafter exercise all rights with respect to said collateral granted herein even though this note shall have been surrendered to the undersigned.

Note for sum of $23,667.45. The mortgage is pledged as security for the payment of Loan No. 13133503 as well as "all other liabilities and obligations of the undersigned, and each of them, to the Bank, ... now existing or hereafter arising, due or to become due." *Id.* at para. I.

At the time the note and mortgage deed for Loan No. 13133503 were executed, the Eltzroths' personal guarantee of the debts

of Scranes, Inc. was presumably in effect having been executed prior thereto, and presumably, since no evidence was offered as to this issue, two other promissory notes with Scranes, Inc. and Mr. Eltzroth as co-makers, and one promissory note from Scranes, Inc., SBA guaranty from the Eltzroths, and one mortgage from the Eltzroths to the bank, all relating to the same loan, were in effect.

Courts have referred to the type of clause at issue here not as a "spreader clause," but as a "dragnet clause." Courts have varied greatly in their decisions as to the effectiveness of the dragnet clause as securing all the indebtedness of the debtors to the mortgagee. Annotation, *Debts Included in Provision of Mortgage Purporting to Cover All Future and Existing Debts (Dragnet Clause)—Modern Status,* 3 A.L.R. 4th 690 (1981). The bankruptcy court must look to Ohio law on this issue.

Mortgages securing future advances, so-called "open-end mortgages," are valid, and are a lien upon the premises as of the date of recordation even if the advances are later made, unless the mortgagee is not obligated to make such advance. Ohio Rev.Code.Ann. § 5301.232 (Page 1981). It must contain the phrase "open-end mortgage" at the beginning of the document. *Id.* This section of the Revised Code "does not prohibit the use of other types of mortgages permitted by law." *Id.* at § 5301.-232(F).

The mortgage document at issue is not an open-end mortgage; it does not contain that phrase nor does it contain language that states that it secures future advances. Nor is it otherwise entitled to protection under Ohio common law. Where the mortgagee is not obligated to make future advances, a mortgage purporting to do so represents an offer by the mortgagor to provide the security of the mortgage for such advances if and when they are made. *Second National Bank v. Boyle,* 155 Ohio St. 482, 99 N.E.2d 474 (1951). The advance must be made by the mortgagee in reliance upon the security of the mortgage. *Id.* This position is based upon two rationales:

(1) a mortgage is security for *actual* payment of money; and (2) subsequent encumbrancers would be prejudiced by the lack of notice furnished by a prior recorded mortgage securing advances which may or may not be made. *Wayne Building & Loan Co. v. Yarborough,* 11 Ohio St.2d 195, 216, 228 N.E.2d 841 (1967). If the mortgage evidences no obligation whatsoever to make future advances, advances made on such a mortgage months after the date of recordation are subordinate to the lien of an open-end mortgage recorded subsequent to that mortgage. *Hunt Energy Co. v. United States (In re Hunt Energy Co.),* 48 B.R. 472, 484 (Bankr.N.D.Ohio 1985) (good discussion of Ohio law on this issue).

The mortgage deed at issue securing Loan No. 13133503 contains no language purporting to secure future advances, or other obligations of the mortgagors, whether present or arising in the future. It is the *promissory note* which contains the language purporting to transfer an interest in certain real estate as security for payment of current and future obligations of the Eltzroths. No evidence was presented to the court, nor was it argued, that the bank was obligated to make future advances as required by state law, nor that the bank made subsequent loans in reliance upon this security.

However, the most fatal flaw to the bank's argument is that the instrument purporting to secure other current and future obligations is a *promissory note,* not a mortgage deed. A note contains none of the formalities required by Ohio law to transfer an interest in real estate such as acknowledgment of the signatures of the mortgagors and attestation by two witnesses. Ohio Rev.Code Ann. at § 5301.01. For the bank to claim that such language in a note is sufficient to convey mortgage interest in real estate which secured other current and future advances is contrary to the basic policy of record notice which is the underpinning of Ohio real estate and lien priority law. "It is within the power of the mortgagee to ... obligate himself [so] that he will be accorded priority over interven-

ing encumbrancers" and to more fully secure his position. *Yarborough,* 11 Ohio St.2d at 218, 228 N.E.2d 841. The clause upon which the bank relies to secure other indebtedness of the Eltzroths to the bank is legally insufficient to do so.

■ Debtor's argument that its confirmed chapter 11 plan of reorganization which provides for discharge of "all obligations owed to [the bank] and to the [SBA] ... by the Debtor, James L. Eltzroth, or Freda C. Eltzroth" discharges all obligations of the Eltzroths as guarantors or otherwise is also incorrect. The bank cites *Old Phoenix National Bank v. Britts (In re Britts),* 18 B.R. 203 (Bankr.N.D.Ohio 1982) as authority for the proposition that only a creditor who *affirmatively adopts* the proposed chapter 13 plan can be bound by its terms. It argues by analogy that since the bank was deemed to have assented to Scranes' chapter 11 plan by not objecting to it, this was not an "affirmative adoption"; therefore, the bank is not bound by the plan.

The bank places its reliance on the wrong case. In *Union Carbide Corp. v. Newboles,* 686 F.2d 593 (7th Cir.1982) the court was presented with the issue of whether a creditor's approval of a chapter 11 plan of arrangement under the Bankruptcy Act of 1898 discharges the obligation owed to that creditor by the debtor's guarantors where plan language purports to do so. In concluding that the creditor's approval did not discharge the obligation of the guarantors, the court stated that a discharge arises by operation of federal bankruptcy law, not by contractual assent of the creditors. *Id.* at 595. Even if the creditor assented, in many cases the approval or disapproval of one creditor has no effect on the proceeding. *Id.* Payment which effects a discharge is not consideration for any promise by the creditor, nor for one to release non-party obligors. *Id.* Although decided under the Bankruptcy Act which contained a section specifically stating that the liability of a guarantor is not altered by the discharge of the bankrupt, the reasoning is persuasive.

The Ninth Circuit was presented with a similar issue to be decided under the Bankruptcy Code. *Underhill v. Royal,* 769 F.2d 1426 (9th Cir.1985). In drawing support from § 16 and other provisions of the Act the court stated that:

Generally, discharge of the principal debtor in bankruptcy will not discharge the liabilities of co-debtors or guarantors. 11 U.S.C. § 524(e) provides: "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." This section of the 1978 Bankruptcy Reform Act was a reenactment of Section 16 of the 1898 Act ...

.     .     .     .     .

When a bankruptcy court discharges the debtor, it does so by operation of the bankruptcy laws, not by consent of the creditors....

[T]he bankruptcy court has no power to discharge the liabilities of a nondebtor pursuant to the consent of creditors as part of a reorganization plan. The broad language of § 524(e), limiting the scope of a discharge so that it "does not affect the liability of any other entity," encompasses this result.

*Id.* at 1432 (citations omitted).

The germ of an argument contained in the bank's posthearing brief finds fuller expression in circuit court decisions directly in point. However, as the clause contained in the note does not effect a conveyance of an interest in land, and even if it did, the failure of the bank to argue or show reliance on the security is fatal to its position, the law on this second issue is of no avail to the bank.

## IV.  CONCLUSION

The mortgage securing Loan No. 13133503 does not serve as additional security for the bank as to the other obligations of the Eltzroths, and the mortgage securing the payment of $23,667.45 given by the Eltzroths on their personal residence on March 3, 1982 should be released of

record. A confirmed chapter 11 plan does not discharge the obligations owed by third party guarantors to the same creditor, but full payment by the primary obligor/debtor of the debt through a confirmed chapter 11 plan does discharge the debt.

As the attorney for the debtor did not raise the correct and best arguments for his clients' position, and as the bank's argument did have some colorable merit, the attorney for the debtor will be denied payment of his fees as requested by the motion. The court will enter a separate order on this Finding directing the bank to execute a release of the mortgage as to the security pledged in Loan No. 13133503 by the Eltzroths. Pursuant to an order of this court entered October 17, 1986, the debtor was to again make a tender of $70,000 to the bank pursuant to the debtor's confirmed plan, and the bank was to credit the accounts as of the date of the original receipt of that sum. Part of the proceeds was to be tendered as payment in full of principal and interest due on Note No. 13133503.