**OLYMPUS HILLS SHOPPING CENTER, LTD.,** a Utah limited partnership, Plaintiff and Appellee,

v.

**Mike LANDES, aka Michael Landes, and Sidney Seftel, Defendants and Appellants.**

No. 890289.

Supreme Court of Utah.

Nov. 22, 1991.

Daniel W. Jackson, Salt Lake City, for defendants and appellants.

Douglas G. Mortensen, Salt Lake City, for plaintiff and appellee.

HOWE, Associate Chief Justice:

Defendant Michael Landes appeals from a judgment in favor of plaintiff Olympus Hills Shopping Center, Ltd., a commercial lessor, for rental default damages and associated costs in the amount of $134,639.

On December 29, 1978, Olympus Hills, as lessor, and Bagel Nosh Holding Corp., as lessee, signed a twenty-year lease for space for a restaurant in a shopping plaza. By July 15, 1981, Bagel Nosh was in default on its rental payments. Olympus Hills consented to the continuation of the lease if Michael Landes and Sidney Seftel personally guaranteed performance of Bagel Nosh's obligations under the lease. Landes and Seftel agreed and documented their agreement by signing the "First Amendment to Lease" ("Amended Lease").

The lease remained in effect; but three years later, Bagel Nosh was again in default. On July 10, 1984, Olympus Hills served upon Bagel Nosh a three-day notice to pay rent or vacate, pursuant to Utah's unlawful detainer statutes, Utah Code Ann. §§ 78–36–1 to –12.6. Bagel Nosh failed to pay the delinquent rent or to vacate the premises. On July 23, Olympus Hills filed a complaint for unlawful detainer against Bagel Nosh, Landes, and Seftel, seeking possession of the leased premises, past due rent, and treble damages under section 78–36–10. On December 20, 1984, the case came on for trial. In the meantime, Bagel Nosh had filed chapter 11 bankruptcy on November 11, 1984. Consequently, Olympus Hills proceeded only against Landes and Seftel personally, as guarantors of the lease. The trial court made findings as to liability and damages resulting from default in rental payments up until the date of the trial. Seftel and Landes were neither present nor represented by counsel at the trial. The court held that, under the terms of the Amended Lease, Seftel and Landes had personally guaranteed Bagel Nosh's performance.

Judgment was entered against Landes and Seftel for damages in the amount of $30,710 ($28,376 owed under the lease as of December 10, 1984, and $2,344 attorney fees). A subsequent judgment was also entered against them on about March 6, 1985, for $5,457 for past due rents and associated costs and attorney fees. The court concluded that reduction to judgment of the past due unpaid amounts did not terminate the lease: "Entry of this judgment in the aforesaid sum against defendant-guarantors Sidney Seftel and Mike Landes for sums owed in connection with the subject lease does not terminate or otherwise alter the continuing obligations of the respective parties under their written agreements with each other." Landes and Seftel did not appeal these judgments and subsequently satisfied them.

On December 31, 1984, less than two months after Bagel Nosh filed bankruptcy, it entered into a stipulation with Olympus Hills, granting Bagel Nosh three months in which to decide whether to assume or reject the lease under the Bankruptcy Code in exchange for Bagel Nosh's curing its defaults under the lease. The stipulation was filed with the bankruptcy court, but no motion to assume or reject was ever filed. It is not clear when Bagel Nosh again went into default following the December 31 stipulation, nor is it clear when it closed its business. The evidence shows only that Olympus Hills was receiving rental payments as late as May 1985. Olympus Hills did not retake possession of the premises until June 1986.

On November 18, 1985, Olympus Hills filed this action against Landes as guarantor for rent and costs which had accrued since the prior judgments. (Seftel had filed personal bankruptcy in the interim period, and therefore, Olympus Hills did not proceed against him.) At trial, Olympus Hills presented evidence of damages in the

amount of $134,424 for defaults in rental payments, common area maintenance, and monthly promotional fees; $165,000 for restoration and expenses; and $20,925 for attorney fees, for a total of $321,133. The court granted Olympus Hills judgment against Landes for a total of $134,639, comprised of $75,000 plus interest "for loss of rentals from June 7, 1985 through June 7, 1987"; $15,000 plus interest for restoration expenses; and $16,667 in attorney fees plus costs.

## I.  LANDES' LIABILITY

### A.  Effect of Bagel Nosh's Bankruptcy

■ Landes contends that the lease terminated when, in the bankruptcy proceeding of Bagel Nosh, the lease was not assumed. He points out that under section 365(d)(4) of the United States Bankruptcy Code, a lease is deemed rejected if it is not assumed by the debtor-lessee or its trustee and the assumption is formally approved by the bankruptcy court. Landes concedes that the Bagel Nosh bankruptcy did not automatically discharge him from liability. *See* 11 U.S.C. § 524(e) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on ... such debt."); *Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir.1985) ("[D]ischarge of the principal debtor in bankruptcy will not discharge the liabilities of ... guarantors."); *Union Carbide v. Newboles*, 686 F.2d 593, 595 (7th Cir.1982) (a bankruptcy court "has no power to discharge the liabilities of a bankruptcy guarantor"). However, he argues that, while the bankruptcy did not automatically relieve him of all liability under the lease, Olympus Hills, as lessor, was relegated under section 24.02 of the lease to recovering only its costs of retaking possession and attorney fees incurred thereby. He asserts that in fact no such costs and fees were incurred. Olympus Hills counters that section 24.02 applies only to a termination of the lease by the lessor and that Landes' liability as a guarantor for the rental was unaffected by the lessee's bankruptcy.

Section 24.02, entitled "Right to Relet," provides that the owner-lessor may reenter the property and terminate the lease in the case of tenant default. The section also provides that the lessor may enter and relet the premises *without* termination and apply the rent received to offset the amount owed by the tenant: "Should Owner elect to re-enter ... it may either terminate this lease or ... without terminating this lease ... relet said premises." If *the owner* does decide to terminate, it would be entitled only to costs of recovering possession and attorney fees: "Should Owner at any time terminate this lease for any breach ... it may recover from Tenant ... the cost of recovering the leased premises (and) reasonable attorneys' fees."

Section 24.02 clearly does not apply when the lessee files bankruptcy and the lease is not assumed because there is no termination "by the Owner." Therefore, Landes' liability remained unaffected by the bankruptcy.

### B.  Effect of Service of Notice to Pay Rent or Quit

■ Landes contends that the service of the statutory three-day notice on Bagel Nosh on July 10, 1984, constituted a written notification of Olympus Hill's termination of the amended lease and the cessation of the lessee's obligation to make future rental payments. We disagree. Service of the statutory notice and the tenant's noncompliance are prerequisites to the tenant's being in unlawful detainer. Utah Code Ann. § 78–36–3 (1987) provides in part:

A tenant of real property, for a term less than life, is guilty of an unlawful detainer: ... (3) when he continues in possession, ... after default in the payment of any rent and after a notice in writing requiring in the alternative the payment of the rent or the surrender of the detained premises, has remained uncomplied with for a period of three days after service....

Thus, service of the notice forces the tenant to either bring the rent current or surrender possession of the premises. Noncompliance by the tenant terminates its right to continued possession; it does not,

however, automatically terminate all contractual rights between the lessor and the lessee which arise out of the underlying lease. We held in *Dang v. Cox Corp.*, 655 P.2d 658 (Utah 1982), that a notice served on the tenant giving him the option to pay the rent current or surrender possession of the premises within three days did not constitute an election on the part of the lessor to forfeit or terminate the lease. There we stated, "It would be anomalous to find that a notice which gives the option of performance also serves as a notice of forfeiture, which by definition does not give that option." *Id.* at 662. *See also Lincoln Financial Corp. v. Ferrier*, 567 P.2d 1102 (Utah 1977) (example of a proper notice of termination giving no options to the tenant).

■ In the instant case, Olympus Hills did not at any time elect to terminate the lease. Instead, it continued to recognize the lease and to hold Landes liable as a guarantor of the rents until such time as it could obtain a replacement tenant for the premises. The judgments which it obtained in early 1985 for past due amounts of rent expressly recited that the on-going liability of the lessee was not affected by entry of the judgments. Indeed, Bagel Nosh and/or the guarantors paid rent until May 1985, ten months after service of the July 1984 notice on them. Additionally, Utah Code Ann. § 78–36–10 recognizes that the contractual obligations of a lease survive the service of a statutory notice by providing that in an action brought for unlawful detainer:

> A judgment entered in favor of the plaintiff shall include an order for the restitution of the premises. If the proceeding is for unlawful detainer after neglect or failure to perform any condition or covenant of the lease or agreement under which the property is held, or after default in the payment of rent, the judgment shall also declare the forfeiture of the lease or agreement.

It is the judgment which decrees the forfeiture of the lease and not the service of the statutory notice, as Landes contends.

## C. Landes' Failure to Execute Guarantee of Lease Agreement

■ Landes next contends that his failure to execute the "Guarantee of Lease Agreement" ("Guarantee"), a document separate from the Amended Lease, prevented any obligation as guarantor from arising, because signing the Guarantee was a condition precedent to his liability. The trial court held, "Defendants Landes and Seftel guaranteed the Tenant's performance of the terms and conditions of the lease," thus, implicitly concluding that execution of the Guarantee was not a condition precedent to Landes' liability.

The Amended Lease which Landes signed provides:

> To cure its default under the Lease Agreement, Tenant must,
>
> (1) pay to Owner the sum of $7500 cash,
>
> (2) execute this First Amended Lease Agreement,
>
> (3) cause to be signed by SEFTEL and LANDES the Guarantee of Lease Agreement attached hereto as Exhibit "C,"
>
> (4) sign and deliver to Owner a promissory note in form acceptable to Owner in the principal sum of $11,000, which $11,000 sum shall be payable according to the terms of this First Amended Lease Agreement set forth in Article I hereof, which note shall be secured by such collateral and personally guaranteed by the persons as Owner requires.

(Emphasis added.) Signing of the Guarantee was required by Seftel and Landes to cure the default of Bagel Nosh. However, the benefit of such performance was for Olympus Hills, and it had the right to demand performance of the condition or waive that performance if it so desired. *Ahrent v. Bobbitt*, 119 Utah 465, 229 P.2d 296 (1951). In *Bobbitt*, we also observed that generally, "where a duty rests upon a promissor with respect to an obligation, he cannot escape liability by failing or refusing to perform part of what he has promised to do." 119 Utah at 468, 229 P.2d at 297. In the instant case, if Landes did not sign the Guarantee, both parties

waived noncompliance. Because the default of Bagel Nosh was cured, it continued in possession and rent was paid by it or the guarantors for nearly four more years.

In the Amended Lease, paragraph 8 states:

> 8. *Guarantee of Lease:* Section 29.19 is hereby added to the Lease Agreement, which section shall provide:
>
> SECTION 29.19—Guarantee of Lease SEFTEL and LANDES hereby personally guarantee the terms of this Amended Lease Agreement, the terms of which guarantee are set forth in Exhibit "C," which exhibit is attached hereto and made a part hereof by this reference.

Section 29.19 clearly imposes the guarantee and refers to "Exhibit 'C,'" the "Guarantee Agreement" only for the *terms* of the guarantee. Landes does not contend that the *terms* contained in the Guarantee diminish or affect the liability he assumed when he executed the Amended Lease.

### D. Summary Judgment

Landes assails a partial summary judgment granted in favor of Olympus Hills which barred him from asserting two defenses to his alleged liability. The bar was premised on res judicata and collateral estoppel, arising from the judgments entered against Landes in early 1985, which judgments he did not oppose, did not appeal, and later satisfied. The two defenses were (1) that the lease had been terminated by the service of the statutory three-day notice in July 1984, and (2) that Landes had no liability because he did not sign the separate Guarantee. We have already addressed the merits of those two defenses in this opinion and ruled against Landes. Therefore, no error in the partial summary judgment which barred the defense could possibly have prejudiced Landes.

## II. DAMAGES

Landes contends that the damages award to Olympus Hills is in error. The trial court awarded $134,639 of the $321,133 sought by Olympus Hills for rental default, attorney fees, and restoration expenses.

### A. Rental Default

■ Landes argued to the trial court that, under Utah Code Ann. § 78–36–12.6, there was a duty on the part of a commercial landlord in the case of rental default to use its best efforts to relet the premises. The court found that Olympus Hills "did not use its best efforts to relet the premises." It then awarded damages against Landes for defaults in rental payments for a twenty-four-month period, from June 1985 to June 1987 ($75,000 plus interest). Other than to indicate the time period represented by the award and Olympus Hills' failure to use its best efforts to relet the premises, the court did not specifically indicate its theory behind the reduction by nearly one-half of the rental default damages sought by Olympus Hills.

Therefore, the issue presented is whether the trial court erred in awarding two years' rental default damages to Olympus Hills. Landes argues that because the court found that Olympus Hills did not use its best efforts to relet, no damages award can stand. The court heard evidence of Olympus Hills' attempts to relet the premises and of prospective tenants who were refused a lease because Olympus Hills found them to be either financially unstable or only desirous of a short-term (three-year) lease. The court was aware that there was a duty to mitigate, and although Olympus Hills did not use its "best efforts," it did make significant effort. Based on the court's finding, we conclude that the court implicitly determined that, had Olympus Hills used its best efforts, it could have relet the premises within two years at the rental rate in the Bagel Nosh lease. The court properly terminated Landes' liability after that time. That termination, however, does not affect his liability for the first two years. Indeed, there was testimony that Bagel Nosh left its bagel-making machinery and other property on the premises until February 1986, thus precluding any re-lease before that date.

Landes argues that the standard we adopted in *Reid v. Mutual of Omaha*, 776 P.2d 896 (Utah 1989), should be applied, although *Reid* was decided after the trial

court in this case rendered its decision. In that case, we held that "a landlord who seeks to hold a breaching tenant liable for unpaid rents has an obligation to take commercially reasonable steps to mitigate its losses, which ordinarily means that the landlord must seek to relet the premises." *Id.* at 906. It appears to us that the "best efforts" standard employed by the trial court is equal to or greater than that required by *Reid.* As a result, only Olympus Hills could have been prejudiced by the trial court's limitation of the rent to two years. Since Olympus Hills has not cross-appealed and Landes has not been prejudiced, we find no error.

### B. Attorney Fees

■ The original lease contains the following provision:

Section 29:06 Attorney's Fees

In the event that any time during the term of this lease either the owner or the tenant shall institute any action or proceeding against the other relating to the provisions of this lease, or any default thereunder, then, and in that event, the unsuccessful party in such action or proceedings agrees to reimburse the successful party for the reasonable expenses of such action including reasonable attorney's fees and disbursements incurred therein by the successful party.

Landes became a guarantor of the lease by executing the Amended Lease. The trial court held him liable for $16,667 in attorney fees to Olympus Hills, which ruling he now assails. He points out that section 29:06 provides for fees only when the owner or tenant brings action against the other and that this action was brought against him as a guarantor, not as a tenant. Bagel Nosh, the tenant, is not a party to this action. This contention is unavailing. While it is literally true that this action is not against the "tenant" but against the tenant's guarantor, it is a suit by the owner on the tenant's obligation under the lease. Because Bagel Nosh declared bankruptcy, it could not properly be sued in this action. Landes, as guarantor, agreed to respond for Bagel Nosh's defaults. This action is a suit to enforce Bagel Nosh's obligation under the lease and, in that sense, is a suit against the tenant. The narrow, literal interpretation urged by Landes would defeat the obvious intention of the parties in inserting section 29:06 in the lease. There is no indication in any other part of the lease or in the Amended Lease executed by Landes that his liability as guarantor was to be anything less than the obligation of the tenant, Bagel Nosh.

### C. Restoration Expenses

■ Landes assails the trial court's award of $15,000 to Olympus Hills to restore the premises to its prelease condition. He contends that Olympus Hills did not adduce any evidence as to the cost of restoration. We find no error. Olympus Hills' general manager, Richard Skankey, testified that he estimated it would cost $175,000 to put the building back in the condition it was in when Bagel Nosh took possession. Evidence was also presented that the premises were left in a damaged condition when Bagel Nosh vacated. The heating, air conditioning, electrical, and plumbing fixtures were damaged so as to increase the cost of restoring the premises. Landes put on no evidence as to the cost of restoration. The trial court's award of $15,000 for restoration expenses is therefore supported by the evidence.

We have considered other assignments of error raised by Landes and find them to be without merit.

The judgment is affirmed, and the case is remanded to the trial court to fix a reasonable attorney fee, which is awarded to Olympus Hills for defending this appeal.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.