**In re SYBARIS CLUBS INTERNATIONAL, INC., d/b/a Sybaris, Debtor.**

**Bankruptcy No. 94 B 16498.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 30, 1995.

William J. Barrett, Gardner, Carton & Douglas, Chicago, IL.

Norman Rifkind, Beigel Schy Lasky Rifkind Fertik & Gelber, Chicago, IL.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This matter is before the Court for Confirmation of Debtor's proposed Second Amended Plan of Reorganization ("Plan"), pursuant to 11 U.S.C. § 1129. For the reasons hereinafter set forth, confirmation will be denied.

## BACKGROUND

Sybaris Clubs International, Inc. ("Sybaris" or "Debtor") is an Illinois corporation organized in 1985. Its sole shareholder is Kenneth Knudson ("Knudson"). The Debtor developed and operated two clubs: one in Downers Grove, Illinois and another in Northbrook Illinois. These clubs are spa facilities that cater to married couples. Knudson also wholly owns two other corporations: Mequon Ventures, Inc., which opened a club in Mequon Wisconsin in 1991; and Frankfort Ventures, Inc., which opened a club in Frankfort, Illinois in 1993. The clubs all operate under the name "Sybaris." In addition to Sybaris, Mequon Ventures, and Frankfort Ventures, Knudson owns Wulff's Island Country Inn, Inc., which operates a restaurant adjacent to the Mequon site. Wulff's Island leases this property.

Prior to August 1994, the Debtor issued notes in the amount of $5.29 million, which were purchased by approximately 320 persons who hold 457 notes. Most of the proceeds from these notes were applied to the development and start-up expenses of Knudson's Mequon, Frankfort, and Wulff's Island projects. The Debtor never had an ownership interest in either the Mequon, Frankfort, or Wulff's Island projects.

The inability to pay these notes caused the Debtor, on August 17, 1994, to file for relief under Chapter 11 of the United States Bankruptcy Code. The Debtor has proposed a Plan that would retire the notes, paid in full, over twenty-seven quarters, with seven percent interest that would accrue from the Effective Date of the Plan.

Article VIII of Debtor's Plan of Reorganization contains the following permanent injunction and release language:

> All persons are hereby permanently enjoined from initiating, participating in, or continuing any legal or equitable action against any present or former director, officer, employee, or shareholder of Sybaris Clubs International, Inc. ("Sybaris"), Mequon Ventures, Inc.[,] Frankfort Ventures, Inc., Wulff's Island Country Inn, Inc., and Wulff's Island Sybaris Club, Inc., including but not limited to Kenneth Knudson, on account of the issuance, sale, or delivery prior to August 17, 1994 of any promissory notes or indentures of any of the foregoing corporations.

> As to Kenneth Knudson, this injunction shall become effective upon (i) the performance by Kenneth Knudson of his obligation under the Sybaris Plan of Reorganization to cause the merger of Frankfort Ventures, Inc., Mequon Ventures, Inc., and Wulff's Island Sybaris, Inc. into Sybaris and (ii) the execution by Kenneth Knudson, for the benefit of Sybaris and the Trustee appointed under the Sybaris Plan of Reorganization, of a written affirmance of his negative covenants contained in the Sybaris Plan of Reorganization. This injunction shall remain effective against all persons at all times, except that this injunction shall dissolve upon the occurrence of any of the following events:

> (i) there is a Restaurant Default as defined in the Plan;

(ii) there is a Material Default as defined in the Plan during the first year after the Effective Date; or

(iii) there is a Material Default as defined in the Plan, other than a payment default, after the first anniversary of the Effective Date which, in addition to any cure periods provided in the Plan, remains uncured for 120 days after notice of the Default was first provided to the Debtor in accordance with the Debenture.

Upon the occurrence of any of the foregoing events this injunction shall dissolve without further order of the Bankruptcy Court, although such dissolution shall be without prejudice of the right of any beneficiary of the injunction to claim that one of the foregoing events did not occur. This injunction shall not limit the rights of any secured creditor against Kenneth Knudson under its loan documents concerning any matter arising after the Effective Date of the Sybaris Plan of Reorganization.

The only impaired class under the Plan is Class 4, which consists almost exclusively of the note holders. Class 4 voted overwhelmingly in favor of the Plan, both in number and amount. *See* 11 U.S.C. § 1126(c).

At least one note holder, Teresa Lewis ("Lewis"), has voted against the Plan, and specifically objects to the permanent injunction. Lewis has filed a class action suit in Illinois state court against Knudson. The lawsuit claims that Knudson violated the Illinois Securities Law of 1953,[1] and seeks rescission and damages arising out of the sale of the notes.[2] Lewis wishes to pursue that claim against Knudson directly post confirmation.[3]

The Official Unsecured Creditor's Committee and the U.S. Trustee have also filed objections to the permanent injunction. The Official Unsecured Creditor's Committee objects to the duration of the injunction. The Committee asserts that the injunction should only remain in effect as long as the Debtor continues to make payments to creditors under the Plan. The U.S. Trustee objects to the issuance of a third party injunction as violative of 11 U.S.C. § 524(e), and contra to Seventh Circuit dicta in which the Court of Appeals sanctioned only consensual releases. *See In re Specialty Equip. Companies, Inc.,* 3 F.3d 1043, 1047 (7th Cir.1993).

The Debtor contends that if the suit against Knudson continues, there will be an adverse impact on the reorganization. The Debtor contends that Knudson's assets consist almost entirely of his interest in the Sybaris Clubs at Downer's Grove, Northbrook, Mequon, and Frankfort, and the Wulff's Island restaurant. They further state that Knudson, is "founder and inspiration" of Sybaris. Thus, any suit against Knudson that may jeopardize or interfere with his control of Sybaris would jeopardize the reorganization.

The Debtor stated in open court that it will accept no modification of the Plan at this time. Thus, the Plan must stand or fall as drafted. Absent the permanent injunction, the Plan would otherwise meet the conjunctive requirements of confirmation under 11 U.S.C. § 1129.

The issue before the court, therefore, is a narrow one: Does this court have the jurisdiction and power, under the Bankruptcy Code, to issue a permanent non-consensual injunction barring creditors' actions against a non-debtor third party?

### DISCUSSION AND ANALYSIS

The district courts have subject matter jurisdiction over civil proceedings that arise

---

1. 815 ILCS 5/1 *et seq.*

2. Both Debtor's disclosure statement and Lewis's state court complaint indicate that in April 1994, the Illinois Secretary of State commenced an investigation regarding the issuance of the notes. Because the Debtor had not registered the notes with the appropriate authorities they could not be reissued. Thus, they had to become due and payable in accordance with their stated maturity dates, all by early 1995. The Debtor's disclosure statement reveals that Sybaris did not have suffi-

cient cash resources to pay more than a small number of the notes.

3. A question may arise as to whether that creditor is a true class representative, because almost all other class members have voted for the Plan. The state court has not yet entertained a motion to certify the class because Lewis agreed to a stay of those proceedings pending this hearing on the Plan's confirmation.

under Title 11, and of all civil proceedings "arising in or related to" cases under Title 11. 28 U.S.C. § 1334(b). This power is delegated to the bankruptcy courts pursuant to 28 U.S.C. § 157 and, in the Northern District of Illinois, is referred to the bankruptcy court under Local General Rule 2.33(A).

When determining whether a Bankruptcy Court may issue a permanent injunction, some courts address the issue as a jurisdictional question. Others question whether the bankruptcy court has the power under § 105 to enjoin such proceedings. Irrespective of which approach is correct, this Court concludes that no such injunction should issue in this case against an objecting creditor. Confirmation will, therefore, be denied.

### A. Jurisdiction

■■ "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankrupt estate." *American Hardwoods v. Deutsche Credit Corp. (In re American Hardwoods)*, 885 F.2d 621, 623 (9th Cir.1989) (quoting *In re Fietz*, 852 F.2d 455, 457 (9th Cir.1988)); *see also Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984). Bankruptcy courts have jurisdiction over actions that could have any 'conceivable effect' on the estate. *American Hardwoods*, 885 F.2d at 623 (9th Cir.1989).

In *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 (5th Cir.1995), the Fifth Circuit reviewed various decisions dealing with the issue. That Court analyzed the decisions where jurisdiction was found under the "related to" doctrine. In that case a creditors' committee in a Chapter 11 case asserted that claims existed against the debtor's directors and other third parties on behalf of the debtor's estate. A settlement was proposed between the debtor and some, but not all, of the directors and other parties. As part of the settlement approval process the Court was asked to issue an injunction barring potential

actions by anyone against the settling parties. The Bankruptcy Court issued the injunction over the objection of non-settling parties. The District court affirmed. On appeal, the Circuit Court reversed.

■■ The Fifth Circuit recognized that there could be appropriate cases for issuance of such an injunction under the "related to" jurisdiction of the Bankruptcy Court. Such jurisdiction is found to exist where the subject of the third party dispute is property of the estate, or because the dispute over the asset would have an effect on the estate. Absent those findings no basis exists for assumption of jurisdiction. In *Zale* the beneficiary of the injunctive protection had, as here, a clear relation to the estate.[4] As that Court stated, however, (citing the Seventh Circuit decision in *Elscint, Inc. v. First Wisconsin Financial Corp. (In re Xonics)*, 813 F.2d 127 (7th Cir.1987)). "It is the relation of dispute to estate, and not of party to estate, that establishes jurisdiction," (*Zale*, 62 F.3d at 755). There, as here, third parties had independent actions against the settling parties. There, as here, the injunction could not issue.

The Seventh Circuit has likewise barred creditors from proceeding against settling parties to recover for causes of action which were exclusive property of the bankruptcy estate under § 105 of the Code. *In Matter of Energy Co-op., Inc.*, 886 F.2d 921 (7th Cir.1989)

### B. Section 105

Some courts point to 11 U.S.C. § 105(a) for authority to issue permanent injunctions that protect non-debtor third parties.[5] Section 105(a) authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions [of the Bankruptcy Code]."

■■ Section 105, however, is merely a vehicle to carry out the otherwise provided powers of the bankruptcy court. *See, e.g., In*

---

4. In that case the beneficiary was an insurer who participated in the settlement.

5. Most courts that discuss § 105 either find "related to" jurisdiction under 28 U.S.C. § 1334(b), or merely assume jurisdiction. The cases dis-

cussed *infra* usually only deal with the bankruptcy court's power to issue an injunction. If the court held there was no jurisdiction, it will be otherwise noted.

*re Lloyd,* 37 F.3d 271, 275 (7th Cir.1994). Section 105 may not be used to create new law. "The bankruptcy court does not have 'free floating discretion,' to create rights outside the Code [citation omitted], but the court may exercise its equitable powers in a manner consistent with the Code." *Lloyd,* 37 F.3d at 275; *see also In re Chicago, Milwaukee, St. Paul and Pacific R.R. Co.,* 791 F.2d 524, 528 (7th Cir.1986).

More importantly, "section 105 does not authorize relief inconsistent with more specific law." *American Hardwoods,* 885 F.2d at 625. This is because "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) (holding that bankruptcy court cannot use equity powers to confirm plan that violates "absolute priority rule," even though plan was otherwise "fair and equitable"); *see also In re Golden Plan of California, Inc.,* 829 F.2d 705, 713 (9th Cir.1986) ("bankruptcy court's equitable powers must be strictly confined within the prescribed limits of the Bankruptcy Act"); *Johnson v. First National Bank of Montevideo,* 719 F.2d 270, 273 (8th Cir.1983) ("Although a bankruptcy court is essentially a court of equity, [citation omitted] its broad equitable powers may only be exercised in a manner ... consistent with the provisions of the Code"), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

### C. Section 524

In the case at bar, the Plan proponent has not pointed to a code section that specifically authorizes the court to act. Instead, the Debtor points to § 524(e), which on its face appears to prohibit such an action. Section 524(e) explicitly states that, with few exceptions, "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." [6] Section 524(e) replaced § 16 of the old Bankruptcy Act ("Act"), which stated "[t]he liability of a person who is a co-debtor with, or a guarantor of or in any matter a surety for, a bankrupt shall not be altered by the discharge of such bankrupt."

Many courts that reject permanent injunctions protecting non-debtor third parties, do so on the basis that § 524(e) precludes such relief. This is because § 524(e) limits the discharge under § 524(a) to the party that has sought bankruptcy relief. "[I]t is the debtor, who has invoked and submitted to the bankruptcy process, that is entitled to its protections; Congress did not intend to extend such benefits to third-party bystanders." *Landsing Diversified Properties–II v. First Nat'l Bank & Trust Co. (In re Western Real Estate Fund, Inc.),* 922 F.2d 592, 600 (10th Cir.1990), *modified sub nom. Abel v. West,* 932 F.2d 898 (10th Cir.1991).

Cases decided under § 16 of the Act consistently held that a discharge in bankruptcy did not affect the liability of a guarantor or non-debtor third parties. *Weber v. Diversey Building Corp. (In re Diversey Bldg. Corp.),* 86 F.2d 456 (7th Cir.1936), *cert. denied,* 300 U.S. 662, 57 S.Ct. 492, 81 L.Ed. 870 (1937); *Union Carbide v. Newboles,* 686 F.2d 593 (7th Cir.1982); *Sandy Ridge Develop. Corp. v. Louisiana Nat'l Bank (In re Sandy Ridge Develop. Corp.),* 881 F.2d 1346, 1351 *reh'g denied,* 889 F.2d 663 (5th Cir.1989); *R.I.D.C. Indus. Devel. Fund v. Snyder,* 539 F.2d 487, 494 (5th Cir.1976), *cert. denied,* 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542 (1977). *Landsing Diversified Properties,* 922 F.2d at 601. In one Act case dealing with Securities Law violations, the Court of Appeals for the Ninth Circuit held that a release provision in a bankruptcy Plan could not prevent a creditor from pursuing a claim against a non-debtor third party. *Underhill v. Royal,* 769 F.2d 1426, 1432 (9th Cir.1985).

Subsequent courts have gone further, extending the juxtaposition of § 105 and § 524 to conclude that the interplay between them bars third party injunctions. Those courts have held that since § 524 is the specific sole discharge power, any further limitation on recovery under § 105, which is the general provision, is limited to the § 524 language. Thus, in *American Hardwoods,* 885 F.2d at 626, the court stated, "Section 524(e), there-

---

**6.** The exception to § 524(e) lies in § 524(a)(3), which provides that a discharge in any case under Title 11 also operates as an injunction against pursuing certain actions against a debtor's spouse.

fore, limits the court's equitable power under Section 105 to order the discharge of the liabilities of nondebtors...." Those courts hold that Section 524(e) does not authorize the extension of jurisdiction of bankruptcy courts to non-debtor third parties, but instead limits that jurisdiction: a confirmed Plan will bind both the debtor and any creditor, but does not discharge anyone other than the debtor.

Some courts, however, allow injunctions that protect non-debtor third parties. These courts argue that although § 524(e) prevents the discharge in and of itself from releasing non-debtor third parties, the court may use its broad equity powers under § 105 to grant injunctions against non-debtor third parties in some circumstances. These courts have granted such injunctions under a variety of theories, but always, either implicitly or explicitly, invoke the bankruptcy court's § 105 injunctive powers only when they have found authorization for such an injunction elsewhere in the Bankruptcy Code or under other state or federal law.

### D. Injunctions to Protect Property of the Estate

For example, in the mass tort cases, a number of bankruptcy courts granted injunctions protecting non-debtor third parties where trusts were set up from insurance policy proceeds to handle future claims against the Debtor. The courts found jurisdiction over the insurance policies of the debtors. *Menard–Sanford v. Mabey (In re A.H. Robins Co., Inc.),* 880 F.2d 694 (4th Cir.), *cert. denied sub nom. Menard–Sanford v. A.H. Robins Co., Inc.,* 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989); *MacArthur Co. v. Johns–Manville Corp.,* 837 F.2d 89 (2d Cir.), *cert. denied,* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988). Because the insurance policies, and hence the trusts, were integral to the reorganization, and the courts had jurisdiction over the insurance policies and trusts as property of the estate, the court also extended jurisdiction over the insurance companies that issued the policies and set up the trusts.[7] *See, e.g., MacArthur,* 837 F.2d at 92–93; *See also Menard–Sanford,* 880 F.2d at 701 (holding that such an injunction was analogous to marshalling of assets, requiring creditors to take payment of their claim from funds that would not defeat other creditors).[8]

Although the above mentioned cases illustrate that courts may issue injunctions against non-debtor third parties in some in-

---

7. These cases should be contrasted with situations in which the automatic stay was extended to protect non-debtor third parties, using the § 105 equity powers in conjunction with the courts power under §§ 362 and 541. Many courts found that the temporary injunctive power bankruptcy courts have in the course of a bankruptcy proceeding pursuant to § 362 could be exercised over an action deemed property of the estate pursuant to § 541. They are thus inapposite, because the case at bar deals with a permanent injunction that extends beyond the confirmation of the bankruptcy case, and thus beyond the scope of the bankruptcy court's § 362 injunctive powers. *See, e.g., Forty–Eight Insulations, Inc. v. Lipke (In re Forty–Eight Insulations, Inc.),* 54 B.R. 905, 908 (Bankr.N.D.Ill.1985) (holding that insurance policies and proceeds are property of the estate and thus subject to automatic stay); *see also A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.),* 788 F.2d 994, 1002–03 (4th Cir.1986) (holding that 11 U.S.C. § 362(a)(3) specifically stays any action, whether against debtor or third parties, to obtain control over property of debtor), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *Johns–Manville Corp. v. Asbestos Litig. Group (In re Johns–Manville Corp.),* 40 B.R. 219, 223 (S.D.N.Y.1984) (holding that automatic stay covered directors, officers, and debtor as non-party witnesses in discovery proceedings because vast scope of contemplated pretrial discovery and trial testimony would have serious adverse impact upon reorganization); *cf. Pacor v. Higgins,* 743 F.2d 984, 995 (3rd Cir.1984) (denying extension of automatic stay because mere possibility of liability that might result in indemnification was insufficient to affect property of estate); *accord Supermercado Gamboa, Inc. v. Camara De Commerciantes Mayoristas De Puerto Rico, Inc. (In re Supermercado Gamboa, Inc.),* 68 B.R. 230, 233 (Bankr.D.P.R.1986) (distinguishing mass tort cases and holding that automatic stay did not apply to non-debtor officers who may claim right to indemnification against debtor corporation).

8. Courts that reject permanent injunctions are also quick to point out that "a discharge in bankruptcy does not extinguish the debt itself but merely releases the debtor from personal liability.... The debt still exists, however, and can be collected from any other entity that may be liable." *See, e.g., Landsing Diversified Properties,* 922 F.2d at 600 (quoting *In re Lembke,* 93 B.R. 701, 702 (Bankr.N.D.1988)).

stances, few cases have actually allowed or upheld non-consensual permanent injunctions without pointing to some other Bankruptcy Code provision or authorization under state law. For example, the Bankruptcy Court for the District of Colorado upheld a permanent injunction against a non-debtor third party because it was consistent with state law governing partnership dissolution. *In re Heron, Burchette, Ruckert & Rothwell,* 148 B.R. 660, 685–89 (Bankr.D.Colo.1992). The Court of Appeals for the Second Circuit, however, upheld a permanent injunction that protected the substantive contributors to the Debtor's reorganization plan without discussing the source of the bankruptcy court's jurisdiction and power. *Securities & Exchange Commission v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group),* 960 F.2d 285, 293 (2d Cir.1992).

Many cases which are cited for the proposition that the bankruptcy court may issue permanent injunctions were, in fact, decided on other grounds. For example, collateral estoppel or res judicata may prevent the court from overturning permanent injunctions against non-debtor third parties, even if the original injunctions were questionable on the merits. In one such case, the Supreme Court held that even if the bankruptcy court "erred in entertaining jurisdiction, its determination of that matter was conclusive upon the parties before it, and could not be questioned by them ... collaterally, or otherwise than on writ of error or appeal". *Stoll v. Gottlieb,* 305 U.S. 165, 175, 59 S.Ct. 134, 139, 83 L.Ed. 104 (1938). The court never reached the issue, however, of whether the underlying jurisdiction was valid: the court only stated that the method of attack on the court's judgment was invalid. *Id.; see also Celotex Corp. v. Edwards,* — U.S. —, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (rejecting collateral attack on § 105 injunction); *Monarch Life Ins. Co. v. Ropes & Gray,* 65 F.3d 973, 983 (1st Cir.1995) (holding that collateral estoppel precluded state court challenge to bankruptcy court's jurisdiction to enter permanent injunction incorporated into confirmation of reorganization plan).

In other cases in which consensual releases were challenged, the court rejected the challenge as moot because the Plan had been substantially implemented. *Specialty Equip. Companies, Inc.,* 3 F.3d at 1049. This is because bankruptcy courts will not disturb a plan once it has been largely implemented. *Id.* at 1049.

Thus, although many courts cite these cases as support for the proposition that permanent jurisdictions are within the powers of the bankruptcy courts, the quoted language is usually dicta of questionable precedential value.

### E. The Seventh Circuit

In *In re Diversey Building Corp.,* 86 F.2d 456 (7th Cir.1936), the Seventh Circuit held that the court did not have jurisdiction to enjoin holders of an original bond issue, who had not consented to the reorganization plan, from proceeding against a non-debtor guarantor of the issue.

In *Union Carbide v. Newboles,* 686 F.2d 593 (7th Cir.1982), the confirmed plan provided for a release of the non-debtor guarantor. A creditor who had voted in favor of the plan and had been paid 20% of its loss under the plan proceeded against the guarantor for the balance. The District Court entered summary judgment for the balance due. On appeal the Seventh Circuit held that the creditors' approval and acceptance of payment under the plan did not discharge the guarantor. Summary judgment was affirmed. *Union Carbide* did not discuss jurisdiction or equity power. The guarantor in that case argued accord and satisfaction resulting from acceptance by the creditor. The court merely held that § 16 of the Act did not give the guarantor a discharge, and acceptance of payment did not create estoppel.

In *Specialty Equipment,* 3 F.3d 1043 (7th Cir.1993), the Seventh Circuit entertained an appeal from a plan that included a release in favor of third parties by creditors who voted in favor of the plan. Non-consenting creditors were deemed not bound by any release. Appellant never applied for a stay pending appeal and the Seventh Circuit disposed of the appeal on the basis that the plan had already been substantially implemented, therefore, no longer appealable.

In its discussion, the Court stated, in dicta, that bankruptcy courts have the power to issue injunctions that protect non-debtor third parties. This power, however, is limited to situations in which an independent grant of such power exists in addition to § 105. The court stated that although "section 524(e) has generally been interpreted to preclude the discharge of guarantors, the statute does not by its specific words preclude all releases that are accepted and confirmed as an integral part of a reorganization." *Id.* at 1046–47 (citations omitted). The court also stated that although § 524(e) provides that a discharge does not affect the liability of non-debtor third parties, the "language does not purport to limit or restrain the power of the bankruptcy court to otherwise grant a release to a third party." *Id.* at 1047. Thus, although § 105 in conjunction with § 524 does not authorize such an injunction, the court stated that such injunctive use would be permissible where another Code section, or other applicable state or federal law authorizes such a remedy.

The court dealt only with consensual releases, stating, "a consensual release does not inevitably bind individual creditors. It binds only those creditors voting in favor of the plan of reorganization." *Id.* at 1047.

**F. The Debtor has failed to show any applicable provision that would authorize the court to invoke its equitable powers under § 105 in this case**

The Debtor has failed to establish any authorization for the issuance of a third party injunction protecting Knudson. The lawsuit is not property of the estate. Nor will it involve property of the estate. Should the lawsuit proceed to trial post confirmation, the plaintiffs would only enforce any judgment against property of Knudson, and not property of the Debtor or the Debtor's estate.

Debtor points to the bankruptcy court's broad equity powers under § 105, and no further. Debtor argues that the inclusion of the permanent injunction is a "proper means" to implement the Sybaris Plan and that the ongoing lawsuits will impair Knudson's ability to perform under the Plan. This is insufficient. Interference may be a basis for issuance of a stay during a Chapter 11 pending approval of a Plan. A permanent injunction, post-confirmation, is another matter.

The Debtor has not indicated a single provision, either within or outside of the Bankruptcy Code, that authorizes the bankruptcy court to invoke its equity power under § 105. Furthermore, the Debtor has not, and in fact, cannot cite any authority in the Seventh Circuit that would allow a non-consensual injunction to stand. Thus, the injunction does not comply with the applicable provisions of Title 11, and the plan is not confirmable because it violates 11 U.S.C. § 1129(a)(1).

### CONCLUSION

The Plan proposed by the Debtor, which incorporates a non-consensual permanent injunction that protects non-debtor third parties violates 11 U.S.C. § 1129(a)(1). All other requirements of confirmation, however, are met. Thus, because the Plan incorporates a non-consensual permanent injunction, and does not provide for its severance should the court find that the injunction violates the Bankruptcy code, the Plan cannot be confirmed.