Sally **PRATT**, et al., Plaintiffs,

v.

**VENTAS, INC.**, et al., Defendants.

Civ.A. No. 3:01CV–317–H.

United States District Court,
W.D. Kentucky,
at Louisville.

Feb. 4, 2002.

Sharon K. Morris, James M. Morris, Morris & Morris, Lexington, KY, for plaintiffs.

John David Dyche, David B. Tachau, Tachau, Maddox, Hovious & Dickens, Louisville, KY, Gregory P. Joseph, New York City, for defendants.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

This case is a putative class action alleging the fraudulent use of the federal bankruptcy process. The five named Plaintiffs contend that lawsuits they had previously filed in various state courts were adversely affected by Defendants' conduct prior to and during Chapter 11 reorganization proceedings. Plaintiffs have filed claims for RICO and/or bankruptcy fraud (Count I); violations of 42 U.S.C. § 1983 (Count II); common law fraud, deceit, and misrepresentation (Count III); and tortious interference with a prospective advantage and prospective contractual advantage (Count IV). Defendants have moved to dismiss all counts pursuant to Fed.R.Civ.P. (9)(b) and 12(b)(6). The Court now considers this motion.

This complex action involves a multitude of parties, claims, and proceedings. Accordingly, the Court must first disentangle the relevant chronological background and procedural posture of the series of events that gave rise to the present litigation. Each side has briefed a number of issues, and at great length. Distilled to the most relevant bare essentials, however, the parties' respective arguments can be summarized as follows. This dispute was generated by the bankruptcy of a major corporation. Plaintiffs assert that Defendants unlawfully manipulated federal bankruptcy law to thwart their ability to pursue preexisting lawsuits. Defendants respond that Plaintiffs are waging a collateral attack upon the validity of a confirmation plan approved by another federal court, a challenge that must be pursued via direct appeal. The parties additionally argue the viability of Plaintiffs' substantive claims. Of course, should this Court find that it lacks jurisdiction over the entire matter, it need not reach these arguments.

### I.

Defendant Ventas, Inc., one of largest health care providers in the country, has undergone various permutations in recent years. Headquartered in Louisville, Kentucky, this entity was first incorporated in Delaware in June 1987 as Vencare, Inc. According to the records of the Kentucky Secretary of State, Vencare changed its name in March 1989 to Vencor, Incorporated, and then in October 1993 to Vencor, Inc. In May 1998, Vencor, Inc., reorganized yet again, this time into two corporations, Ventas, Inc. and Vencor, Inc. In doing so, "old" Vencor became Ventas, and "new" Vencor was created. The resulting

division of responsibilities was that Ventas became a real estate holding company—i.e., retaining the company-owned land and buildings, such as hospitals and nursing homes—while "new" Vencor assumed management of the health care services—i.e., leasing these properties and operating the hospitals and nursing homes.[1]

Each of the named Plaintiffs in this case had filed a state court suit against one of the Vencor entities prior to or soon after the commencement of its bankruptcy proceedings. In September 1996, Plaintiff Sally Pratt filed suit against "old" Vencor in San Francisco County, California, Superior Court for age discrimination and wrongful termination. In March 1998, Plaintiff Valiza Nystrom filed suit against Vencor Hospitals Texas, Ltd., in Harris County, Texas, District Court for constructive discharge. In October 1998, Plaintiff Mark Dayman, Executor of the Estate of Liesel Dayman, filed suit against "new" Vencor in Chittenden County, Vermont, Superior Court for negligence. In November 1999, Plaintiff Robert McCray, pursuant to a Power of Attorney for Lee Ona Lee, sued Vencor Nursing Centers East, LLC, in Lee County, Florida, Circuit Court for negligence.[2]

On September 13, 1999, "new" Vencor filed a petition for relief under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware. Defendants then filed motions pursuant to 11 U.S.C. § 362 for an automatic stay in each of Plaintiffs' respective state court actions pending the resolution of the federal bankruptcy proceedings: doing so in Dayman's suit on September 17, 1999; Pratt's suit on September 23, 1999; Nystrom's suit on September 27, 1999; and McCray's suit on December 2, 1999. Three of the four Plaintiffs responded by filing proofs of claim in the Bankruptcy Court: McCray on December 28, 1999; Dayman on January 5, 2000; and Pratt on January 6, 2000.

On December 14, 2000, a Fourth Amended Joint Plan of Reorganization of Vencor, Inc. and Affiliated Debtors ["Reorganization Plan"] was proposed. Defendants on December 29, 2000, mailed notice of the Reorganization Plan-including a deadline for filing objections to the Plan—to each of the Plaintiffs who had filed a proof of claim.[3] The Bankruptcy Court confirmed the Reorganization Plan in an order issued on March 19, 2001 ["Confirmation Order"], and the Plan became effective on April 20, 2001.

Article XI of the Reorganization Plan sets forth the effect of confirmation. Pursuant to § 11.01:

the Debtor Parties ... shall be discharged and released forthwith from,

---

1. In addition to Ventas, individual named Defendants in this case include: W. Bruce Lunsford, Chairman and CEO of "old" and "new" Vencor; Jill L. Force, Senior Vice President and General Counsel of "old" and "new" Vencor; and Joseph Landenwich, Vice President of Corporate Legal Affairs for "new" Vencor. Because this Court ultimately determines that the prior Delaware Bankruptcy Court ruling precludes all of Plaintiffs' claims, it is not necessary to repeatedly distinguish between Ventas and the individual defendants, all of whom hereinafter will be referred to collectively as "Defendants".

2. The fifth named Plaintiff, Mark Byrne, is an attorney for Plaintiff Nystrom. He is a party to this suit because of Ventas's allegedly tortious interference with his prospective advantage and prospective contractual advantage with his client.

3. The record does not reflect why the fourth and fifth named Plaintiffs, Nystrom and her attorney Byrnes, failed to file a proof of claim. Nevertheless, the stay filed in Nystrom's suit obviously provided notice to both that their claims may be impaired by the bankruptcy proceedings.

and the Confirmation Order shall operate as an injunction against the commencement or continuation of any action ... including but not limited to claims set forth in and arising from or relating to the proofs of claim that were filed by ... the holders of Claims in Classes 3A and 3B ... [arising] from any conduct of the Debtor Parties occurring prior to the Confirmation Date ... whether or not a proof of claim is filed or deemed filed....

In addition, § 11.02(a) provided for the "Releases of the Debtors," i.e., Vencor, and § 11.02(b) provided for the "Release of the Ventas Entities":

In consideration for the respective Ventas Entities entering into the Amended Ventas Leases, entering into the agreements set forth in section 6.12 of the Plan and agreeing to the treatment set forth in the Plan, all of which are integral to the effectuation of this Plan and the consummation of the transactions contemplated hereby ... all of the following waivers, releases and related relief shall be provided by and binding on ... the holders of Claims in Classes 3A, 3B....

Finally, § 3.03 specifies that Class 3A "consists of all Convenience Claims," and that Class 3B "consists of all Trade Claims, Malpractice and Other Litigation Claims, Benefits Claims, Indemnification Claims, Employment Contract Claims and Unsecured Claims that are not Convenience Claims."

In other words, the Reorganization Plan contains an injunction proscribing suits directed not only against the debtor (Vencor), but also against Ventas (the defendant in this case). The scope of this injunction covers actions by claimants in Classes 3A and 3B arising from any conduct of Vencor or Ventas prior to March 19, 2001, which includes the original state court actions filed by the Plaintiffs in this case.[4] Of course, Plaintiffs are not explicitly pursuing their pre-bankruptcy state law claims before this federal court. Rather, they are alleging that Defendants engaged in fraudulent acts to secure the Bankruptcy Court's releases from this preexisting liability. But, the Reorganization Plan also features an exculpation clause at § 11.05, which states:

None of the Debtors, the Reorganized Debtors, the Ventas Entities, [or] any of their respective Representatives[5] ... shall have or incur any liability to any holder of a Claim or Interest for any good faith act or good faith omission in connection with the Debtors' restructuring, the Plan, or the Reorganization Cases, including all decisions, actions, inactions and alleged negligence or misconduct relating thereto, all prepetition activities leading to the promulgation and confirmation of the Plan, and administration of the Plan or the property to be distributed under the Plan; provided, however, such exculpation shall not relate to post Confirmation Date conduct deemed to be willful misconduct or gross negligence....

To summarize, the terms of the Reorganization Plan, duly confirmed by the U.S. Bankruptcy Court for the District of Delaware, apparently prohibit Plaintiffs from seeking redress against Vencor, Ventas, or their officers for any alleged improprieties committed in connection with Vencor's bankruptcy, prior to the date of confirma-

---

4. Defendants contend that all of Plaintiffs state law claims are included within Classes 3A and 3B, and Plaintiffs offer no objection to the contrary.

5. This would presumably include, *inter alia*, individual defendants Lunsford, Force, and Landenwich. Again, Plaintiffs do not argue otherwise.

tion. Plaintiffs do not challenge this conclusion directly. They instead argue that the Bankruptcy Court lacks jurisdiction over their present third-party action, and therefore the Confirmation Order's injunction barring suit against Ventas has no preclusive effect upon the case before this Court.

## II.

Although the topic is hardly the focus of the parties' extensive briefing materials, resolution of this motion involves a fundamental question of the federal courts' jurisdictional limits. Neither the District Court for the Western District of Kentucky nor the Bankruptcy Court for the District of Delaware enjoy unbounded authority to address any dispute a plaintiff brings before it. As explained by the U.S. Supreme Court, "[t]he jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). Plaintiffs assert that the Confirmation Order issued by the Delaware Bankruptcy Court exceeded the scope of that body's statutory purview. Defendants respond that any such challenge must be waged via direct appeal, and therefore cannot be heard by this Court sitting in the Western District of Kentucky.

## A.

■ Plaintiffs' argument is based upon the disputed breadth of bankruptcy courts' "related to" jurisdiction. "[A] bankruptcy court may potentially include an injunction as part of a settlement 'only once jurisdiction is established.' " *In re Zale Corp.*, 62 F.3d 746, 755 (5th Cir.1995) (quoting *In re Davis*, 730 F.2d 176, 183–84 (5th Cir. 1984)). A bankruptcy court's jurisdiction over a case between two non-debtors is established by 28 U.S.C. § 1334. *See id.*

at 751 (quoting *Quattrone Accountants, Inc. v. I.R.S.*, 895 F.2d 921, 926 (3rd Cir. 1990)).

> Title 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The district courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or related to a cause under title 11 ... to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

*Id.* (quoting *Celotex*, 514 U.S. at 307, 115 S.Ct. 1493). Because Ventas, the defendant in this case, was not the debtor in the original bankruptcy proceeding, but rather was a third party, the Bankruptcy Court's jurisdiction over it ostensibly must have been justified on the ground that matters involving Ventas were "related to" Vencor's bankruptcy case.

Plaintiffs rely heavily on the fact "that a large majority of cases reject the notion that bankruptcy courts have 'related to' jurisdiction over third-party actions," *id.* at 753, and assiduously survey the applicable standard within each federal circuit. Predictably, Plaintiffs further argue that under any of these standards the Delaware Bankruptcy Court's jurisdiction must be deemed invalid. And, indeed, "[t]he circuits are split on whether a bankruptcy court can under any circumstances issue a permanent injunction that protects nondebtor third parties from liability." *In re Potasky Jeweler, Inc.*, 222 B.R. 816, 824 (S.D.Ohio 1998) (collecting cases).

Plaintiffs' argument may well be a legitimate one. However, it does not decide the case. This Court must first establish a jurisdictional foundation to review the

merits of a decision of a sovereign federal court of another district.[6]

### B.

Initially, Defendants rely primarily on the argument that the terms of the Confirmation Order effected a valid release and discharge from liability. Plaintiffs reply by challenging the jurisdiction of the Delaware Bankruptcy Court to include injunctive relief prohibiting suit against Ventas as part of the Confirmation Order. Defendants in turn respond that the Order is res judicata as to Plaintiffs' current suit. However, Defendants only cursorily assert the defense, without providing additional substantiation as whether and how the individual elements of res judicata are satisfied.

The Court must first consider whether res judicata applies to the Delaware Bankruptcy Court's Confirmation Order. The Supreme Court in 1940 stated that a bankruptcy court "has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is res judicata in a collateral action." *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 377, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 171–72, 59 S.Ct. 134, 83 L.Ed. 104 (1938)). A determination that the Confirmation Order of the Delaware Bankruptcy Court is res judicata in this action would mean that Plaintiffs are absolutely barred from proceeding. *See, e.g., Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir.1995).

 A judicial decree is accorded preclusive effect only if four distinct elements are met. Within the Sixth Circuit, these are:

1. A final decision on the merits in the first action by a court of competent jurisdiction;

2. The second action involves the same parties, or their privies, as the first;

3. The second action raises an issue actually litigated or which should have been litigated in the first action; [and]

4. An identity of the causes of action.

*Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992). The first three prongs of this standard are easily satisfied. The Confirmation Order issued by the Delaware Bankruptcy Court was: i) a final judgment, ii) that involved the same parties, iii) who had ample opportunity to raise any allegations of fraudulent behavior. The Court is not fully persuaded, however, that the two actions present an identity of claims. "Identity of causes of action means an 'identity of the facts creating the right of action of the evidence necessary to sustain each action.'" *Id.* at 484 (quoting *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224,

---

**6.** The myriad case law to which Plaintiffs cite to demonstrate the limited scope of bankruptcy courts' "related to" jurisdiction over third-party non-debtors feature direct appeals of confirmation orders, not collateral attacks. On this basis alone these decisions are distinguishable from the present matter. For example, Plaintiffs cite two cases as particularly on point. "It is significant that both Circuits which have been faced with a permanent injunction of the scope reflected herein have flatly rejected the enforceability of such an omnibus injunction as being completely outside of the jurisdiction of the bankruptcy court." Pls.' Mem. in Opp'n to Mot. to Dismiss at 21. The first, *In re Continental Airlines*, 203 F.3d 203 (3rd Cir.2000), is a Third Circuit appeal of an affirmance by the U.S. District Court for the District of Delaware of a confirmation order by the U.S. Bankruptcy Court for the District of Delaware. The second, *In re Zale*, 62 F.3d at 746, is a Fifth Circuit appeal of an affirmance by the U.S. District Court for the Northern District of Texas of a settlement agreement approved by the U.S. Bankruptcy Court for the Northern District of Texas.

1227 (6th Cir.1981)). Defendants could plausibly argue that the causes of action presently pursued by the Plaintiffs—RICO, 42 U.S.C. § 1983, common law fraud, and tortious interference with a prospective advantage—are founded upon the same facts and evidence considered by the Delaware Bankruptcy Court when deciding to issue its Confirmation Order.[7] But, Defendants have not made this argument, and the Court declines to explore the outer boundaries of the principles of res judicata in the absence of additional information and argument from both parties.

## C.

■ Although res judicata may not apply to the instant case, the Court does find that another member of the preclusion family—the so-called "collateral attack" doctrine—appropriately governs the disposition of this motion. The two doctrines are interrelated and sometimes confused, but they are not interchangeable. Res judicata refers to the *effect* of an earlier ruling on a subsequent action. Collateral attack refers to the *method* of attempting to circumvent an earlier ruling by filing a subsequent action. *See Willy v. Coastal Corp.*, 503 U.S. 131, 137, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992) ("In *Chicot Coun-*

*ty[, supra]*, we held that a judgment rendered in a case in which it was ultimately concluded that the District Court was without jurisdiction was nonetheless res judicata on collateral attack made by one of the parties.").

■ As the name implies, "[t]he collateral attack doctrine precludes litigants from collaterally attacking the judgments of other courts." *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902 (9th Cir.2001). This doctrine has been repeatedly reaffirmed by the Supreme Court, most recently in 1995 in *Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403, a decision involving circumstances similar to those found in the case at bar. In particular, *Celotex* likewise featured preexisting lawsuits, a subsequent bankruptcy proceeding, injunctive relief to third-party non-debtors, and an attempted challenge to the limits of a bankruptcy court's jurisdiction. The Court will therefore briefly recount the details of that opinion.

In 1987, Bennie and Joann Edwards sued Celotex in the Northern District of Texas for asbestos-related injuries. That court entered judgment for the Edwards

---

7. According to Plaintiffs, their current causes of action arise from Defendants' allegedly fraudulent behavior in securing the releases from liability granted by the Bankruptcy Court. But, the Bankruptcy Court appeared to consider Defendants' pre-confirmation behavior in its decision to enjoin Plaintiffs' state law claims against Ventas:

> The evidence presented in connection with the Confirmation Hearing establishes that the releases of the nondebtor Entities contained in Article XI of the Plan [i.e., Ventas] are fair and necessary to the reorganization of the Debtors, and that the nondebtor Entities receiving the benefit of the releases contained in Article XI of the Plan have made substantial contributions toward the reorganization of the Debtors, which are integral to the effectuation of the Plan and

> the consummation of the transactions contemplated therein (including, without limitation, the funding of distributions to holders of Allowed Claims and the Debtors' performance under the contracts and leases assumed pursuant to the Plan).

Confirmation Order at ¶ 8, p. 16. The same facts and evidence—Ventas's behavior in securing releases from suits by members of Classes 3A and 3B—are thus arguably integral to the claims before both the Bankruptcy Court and this Court. That the Bankruptcy Court did not specifically contemplate whether Defendants' behavior prior to and during the Chapter 11 proceedings was fraudulent may mean only that Plaintiffs neglected to raise such an allegation at that time. For the reasons stated elsewhere in this opinion, the Court need not reach this issue.

in April 1989. Celotex posted a supersedeas bond to stay the execution of the judgment pending its appeal to the Fifth Circuit, and Northbrook Property and Casualty Insurance Company served as surety on the bond. On October 12, 1990, the Fifth Circuit affirmed the judgment against Celotex, but on that same day Celotex filed a Chapter 11 petition for reorganization in the U.S. Bankruptcy Court for the Middle District of Florida. This automatically stayed all proceedings against Celotex, and on October 17, 1990, the Bankruptcy Court issued an injunction pursuant to 11 U.S.C. § 105(a) that further stayed all actions against Celotex "regardless of ... whether the matter is on appeal and a supersedeas bond has been posted." *Id.* at 303, 115 S.Ct. 1493. The Edwards filed a motion in the Northern District of Texas under FED.R.CIV.P. 65.1 for permission to execute against Northbrook on the supersedeas bond. The Bankruptcy Court for the Middle District of Florida subsequently reaffirmed the scope of its injunction, stating "the judgment creditor is precluded from proceeding against any supersedeas bond posted by Debtor without first seeking to vacate the Section 105 stay entered by this Court." *Id.* at 303–04, 115 S.Ct. 1493 (quoting *In re Celotex,* 128 B.R. 478, 485 (1991)). The District Court for the Northern District of Texas nevertheless permitted the Edwards to enforce the bond against Northbrook. The Fifth Circuit affirmed, ruling on the merits of the Bankruptcy Court's injunction.

The Supreme Court reversed. The Edwards conceded that the terms of the Bankruptcy Court's injunction barred their action against Northbrook. The Court noted that:

> In *GTE Sylvania, Inc. v. Consumers Union of United States, Inc.,* 445 U.S. 375, 386, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980), we reaffirmed the well-estab-lished rule that "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order."

514 U.S. at 306, 115 S.Ct. 1493. The Court further noted that "[t]his rule was applied in the bankruptcy context more than 60 years ago in *Oriel v. Russell,* 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419 (1929), where the Court held that turnover orders issued under the old bankruptcy regime could not be collaterally attacked in a later contempt proceeding." *Id.* at 307, 115 S.Ct. 1493. The Edwards did not challenge this rule, but instead "argue[d] that the Bankruptcy Court lacked *jurisdiction* to issue the Section 105 Injunction, though much of their argument goes to the correctness of the Bankruptcy Court's decision to issue the injunction rather than to its jurisdiction to do so." *Id.*

The Court proceeded to engage in a lengthy discussion of the scope of a bankruptcy court's "related to" jurisdiction, but also stated explicitly: "we need not, and do not, address whether the Bankruptcy Court acted properly in issuing the Section 105 Injunction." *Id.* at 312, 115 S.Ct. 1493. The Court then concluded:

> We have made clear that "[i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decisions are to be respected." If respondents believe the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done. If dissatisfied with the Bankruptcy Court's ultimate decision, respondents can appeal "to the district court for the judicial

district in which the bankruptcy judge is serving," see 28 U.S.C. § 158(a), and then to the Court of Appeals for the Eleventh Circuit, see § 158(d). Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts of Texas. This they cannot do without seriously undercutting the orderly process of the law.

*Id.* at 313, 115 S.Ct. 1493 (some internal citations omitted).

This Court finds *Celotex* to be highly instructive. Like the claimants in that case, Plaintiffs here do not dispute that the Bankruptcy Court entered an order which ostensibly prohibits their claims. Rather, they similarly assert that the Bankruptcy Court exceeded its jurisdictional bounds by enjoining post-confirmation suits against a non-debtor third-party for its pre-confirmation actions. *Celotex* reaffirmed the rule that such a challenge cannot be sustained, and this Court holds that Plaintiffs are barred from collaterally attacking the Confirmation Order issued by the Delaware Bankruptcy Court. In so doing, the Court expressly declines to consider whether the Bankruptcy Court exceeded its statutory authority in granting injunctive relief to Defendants. The District Court for the Western District of Kentucky may not properly exercise appellate review over these earlier bankruptcy proceedings. *See* 28 U.S.C. § 158(a) ("An appeal ... shall be taken *only* to the district court for the judicial district in which the bankruptcy judge is serving.") (emphasis added).

The Court emphasizes that its ruling does not prevent Plaintiffs from seeking relief. But, if the Confirmation Order was issued in error—whether the result of either fraud or lack of jurisdiction—it remains the responsibility of the Delaware Bankruptcy Court, Delaware District Court and, if necessary, the Third Circuit, to effect any necessary corrections. The collateral attack doctrine is premised upon the need to prevent precisely this type of suit, which is, one must remember, essentially filed in defiance of a federal court injunction. The Supreme Court has made emphatically clear that the integrity of the federal judiciary is threatened by circumventing the proper channels of the statutorily-defined appellate process. This Court concurs with and is bound by that directive.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Defendants have moved to dismiss Plaintiffs' claims. The Court has reviewed the memoranda of the parties as well as the exhibits of record. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss is SUSTAINED and Plaintiffs' Complaint is dismissed with prejudice.

This is a final and appealable order.